IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLARENCE WYATT HOLLAND | § | |
| TDCJ No. 2233325, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:22-cv-651-K-BN |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Clarence Wyatt Holland – a Texas prisoner – was charged in Kaufman County with continuous sexual abuse of a child under 14. Dkt. No. 8-29 at 8-9. A jury found him guilty as charged and sentenced him to 50 years of imprisonment. *State of Texas v. Clarence Wyatt Holland*, 17-10195-422-F, (422nd Dist. Court, Kaufman Cty., Nov. 7, 2018); Dkt. No. 8-29 at 10-11.

The Fifth Court of Appeals of Texas affirmed the judgment. *Holland v. State*, No. 05-18-01419-CR, 2019 WL 6799755, at *5 (Tex. App. – Dallas Dec. 13, 2019, pet. ref'd). And the Texas Court of Criminal Appeals (CCA) denied Holland's petition for discretionary review. *Holland*, PD-0028-20 (Tex. Crim. App. 2020).

Holland applied for state habeas relief. The CCA denied the application without written order based on the findings of the habeas trial court after a hearing and on the court's own independent review of the record. *See Ex parte Holland*, WR-92-643-01, (Tex. Crim. App. Jan. 26, 2022); Dkt. No. 8-19.

Holland then filed this application for federal habeas relief pursuant to 28 U.S.C. § 2254. Dkt. Nos. 1-2. The Court referred this action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) pursuant to a standing order of reference from United States District Judge Ed Kinkeade. The State responded to Holland's application. Dkt. No. 10. Holland filed a reply. Dkt. No. 11.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny Holland's application for a writ of habeas corpus.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and

time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th

- 4 -

Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the

extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford*

*v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on [an] unreasonable factual determination." *Will v. Lumpkin*, 978 F.3d 933, 942 (5th Cir. 2020) (emphasis in original). In other words, habeas relief is unwarranted if the state court's conclusion would not have changed even if it got the disputed factual determination right. *See id.*

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)). This is "[b]ecause a federal habeas court only reviews the reasonableness of the state court's ultimate decision," "not the

written opinion explaining that decision." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (quoting *Neal*, 286 F.3d at 246).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

Noting that his trial counsel did not make "one objection during a three-day continuous sexual abuse of a child jury trial," Holland claims that his trial counsel was ineffective in various ways. Dkt. No. 1 at 6; Dkt. No. 2 at 19.

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."

*Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

And, so, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)); *Dunn v. Reeves*, 141 S. Ct. 2405, 2410-11 (2021) (per curiam) (noting that a federal court can may grant habeas relief only if *every* "'fairminded juris[t]'" would agree that *every* reasonable lawyer would have made a different decision (citing *Richter*, 562 U.S. at 101) (emphasis in original)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been

established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense

counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

## A.    Failure to Object to Prosecutorial Misconduct During Voir Dire

Holland claims that his trial counsel was ineffective for not objecting to the prosecutor improperly vouching for the State's case during the voir dire. Dkt. No. 1 at 6; Dkt. No. 2 at 20-26. The prosecutor made these comments to the jury pool:

> My role, our role is not to just get convictions. I was telling you that all of us took an oath to seek justice. What does that mean? That means that when a case comes in, we don't have to accept it. That means that if it does not meet a certain burden of proof, if there's no probable cause in the case or if we don't think we can get there beyond a reasonable doubt at some point, then guess what? We can send it back to the agency, right? Okay. Now we also have a box full of motions to dismiss. At any stage after the case is filed, even after a grand jury has issued an indictment, we can, with the stroke of our signature, sign a motion to dismiss and dismiss a case, okay. Now, judge talked about it being the State's burden. It is our burden to prove each and every element of this charge beyond a reasonable doubt. Now, if we don't do it, and you find the defendant not guilty, whose fault is that?
>
> ....
>
> It's our fault. It's not your fault. And so I'm smiling right now, and if after you find the defendant not guilty, guess what, we're still going to be polite. We're still going to smile. Why? Because its not your fault, its our fault. So we want you to understand that, that we are not just here to get a conviction. We're here to seek justice, okay. So do we believe in the case? Obviously we believe in the case. We wouldn't be here, okay. Do we intend to prove each and every element beyond a reasonable doubt? Obviously or we wouldn't waste your time, and we would not waste our time, okay.

Dkt. No. 8-5 at 40-41.

Holland argues – and the direct appellate court agreed – that such statements are improper under Texas law because they amount to an opinion from the prosecutor as to the guilt of the defendant. *See Holland*, 2019 WL 6799755, at *4 (finding, in context of a prosecutorial misconduct claim, that prosecutor's commentary was improper but not sufficient to set aside the conviction) (citing *Clayton v. State*, 502

S.W.2d 755, 756 (Tex. Crim. App. 1973); *Escobar v. State*, No. 01-13-00496-CR, 2015 WL 1735244, at *1 (Tex. App. – Houston [1st Dist.] Apr. 14, 2015, pet ref'd) (mem. op., not designated for publication); *Williams v. State*, 417 S.W.3d 162, 171-72 (Tex. App. – Houston [1st Dist.] 2013, pet ref'd); *Beltran v. State*, 99 S.W.3d 807, 811 (Tex. App. – Houston [14th Dist.] 2003, pet. ref'd)).

According to that jurisprudence, statements like those offered in Holland's case are improper because they convey the idea that the prosecutor has a basis for such an opinion outside the evidence at trial, and because such statements encourage jurors to conclude that the defendant is necessarily guilty because he is being tried. *See Williams*, 417 S.W.3d at 172; *Mendoza v. State*, 552 S.W.2d 444, 447 (Tex. Crim. App. 1977).

Still, the CCA denied this claim, finding both that Holland's counsel was not ineffective, and that Holland failed to show prejudice even if he were. The state habeas court, in findings and conclusions adopted by the CCA, reasoned:

> 3.    Applicant failed to cite to any case law showing that [trial counsel] did not adhere to an objective standard of reasonableness by failing to object to the prosecutor's statements during *voir dire*;
>
> 4.    Applicant's brief cites only to case law demonstrating that the prosecutor's statements themselves were in error;
>
> 5.    [Trial counsel's] decision to not object to the prosecutor's statements was strategic because he did not want to damage his credibility with the jury;
>
> 6.    Applicant failed to show that [trial counsel's] strategic decision not to object to the prosecutor's statements was an error so serious as to deprive Applicant of a fair trial;

- 14 -

> 7.     Applicant failed to show that he was harmed by [trial counsel's] decision not to object to the prosecutor's statements during voir dire[.]

Dkt. No. 8-30 at 192 (internal citations omitted).

Holland argues that the finding that his trial counsel's failure to object was strategic is unreasonable because Holland's trial counsel admitted during the state habeas hearing that he did not know that the prosecution's comments were improper, so the failure to object resulted from ignorance of the law – not strategy. *See id.* at 47-49.

An attorney's ignorance of the law relevant to a decision of whether to object may preclude the argument that his or her action was a matter of reasonable trial strategy. *See, e.g., Bullock v. Carver*, 297 F.3d 1036, 1049-50 (10th Cir. 2002) ("An attorney's demonstrated ignorance of law directly relevant to a decision will eliminate *Strickland's* presumption that the decision was objectively reasonable because it might have been made for strategic purposes, and it will often prevent the government from claiming that the attorney made an adequately informed strategic choice.") citing *Williams v. Taylor*, 529 U.S. 362, 395 (2000)); further citations and footnote omitted).

But the state habeas court also determined that there was no prejudice from trial counsel's failure to object. And Holland must also show that this finding was unreasonable. *See, e.g., Garcia v. Director, TDCJ-CID*, 73 F. Supp. 3d 693, 710 (E.D. Tex. 2014) ("Furthermore, when a state court provides alternative reasons for denying relief, a federal court may not grant relief 'unless *each* ground supporting the

state court decision is examined and found to be unreasonable under AEDPA.'") citing *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012)) (emphasis in original).

Holland fails to do that.

On direct appeal in this case, the court considered whether the failure to object to the improper vouching would be a fundamental error – that is, egregious harm that deprives the defendant of a fair and impartial trial – in the context of a prosecutorial misconduct claim. *Holland*, 2019 WL 6799755, at *4 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). It concluded that it was not because "other actions by the prosecutor mitigated any harm the statement might have brought to the presumption of innocence." *Id.* Namely, "[t]he prosecutor promptly and thoroughly explained to the venire the presumption of innocence, the burden of proof, and [Holland's] Fifth Amendment right not to testify." *Id.* (citing *Escobar*, 2015 WL 1735244, at *4; *Beltran*, 99 S.W.3d at 811-12).

While the appellate court in Holland's case assessed prejudice in the context of fundamental error – a more demanding standard than *Strickland* prejudice – it relied on *Escobar*, which did address *Strickland* prejudice in a similar context. In *Escobar*, the prosecutor made similar comments to those that Holland complains of here. *See Escobar*, 2015 WL 1735244, at *1 ("So when we see someone that we believe to be not guilty, we can dismiss that case … I also have had the opportunity to view our assistant district attorney, Mike Anderson, in a training session. He said, you know, 'I'm so thankful for this job and this position because I never have to try a case that I don't believe in.'"). The defense attorney failed to object, but the court found no

- 16 -

prejudice because the prosecutor "subsequently told the venire that the State had the burden to prove all elements of the offense, that the State's burden was beyond a reasonable doubt, and that Escobar was entitled to a fair trial and a presumption of innocence until proven guilty." *Id.* at *1.

The *Escobar* court relied in turn on *Mendoza*, in which the court held that improper opinions given to the jury pool were not fatal where the district attorney later clarified the presumption of innocence and the State's burden of proof. Such actions alleviated the chief dangers of prosecutorial vouching: that jurors might believe the prosecutor had an undisclosed basis for his opinion or that the defendant was necessarily guilty because he was being tried. *Mendoza*, 552 S.W.2d at 447.

Here, as in cases like *Escobar* and *Mendoza*, and as the direct appellate court noted in Holland's case, the prosecutor informed the jury pool that the State had the obligation to prove every element of the offense beyond a reasonable doubt (Dkt. No. 8-5 at 41), that Holland was presumed to be innocent (*Id.* at 41-42), and that Holland could elect not to testify, which could not be held against him (*Id.* at 42.).

While *Escobar* and *Mendoza* are not carbon copies of Holland's case – neither was in the context of sexual abuse where the only evidence was the complainant's testimony, which was the case here – they sufficiently establish the principle that curative actions following improper commentary to the jury pool might alleviate prejudice from the failure to object to that commentary. This is at least something that fairminded jurists could debate, so the CCA did not unreasonably apply *Strickland* in denying this claim.

### B.    Failure to Object to Stepmother's Testimony

Holland faults his trial counsel for not filing an evidentiary motion or objecting to testimony from the complainant's stepmother, an outcry witness. Dkt. No. 1 at 6; Dkt. No. 2 at 26-28.

Holland claims that the stepmother improperly opined that she believed that the complainant was sexually abused:

> Q.    Ms. Oden, after [the complainant] outcried to you about the sexual abuse, what did she have to endure in this legal process?
>
> A.    A lot. She's had to relive every detail of everything that happened, which has been a nightmare for her. She doesn't sleep. Any attempt that she has made to have a normal life aside from the fact that she had to have a kidney transplant has been stomped on by this. She's endured a lot more than kid should ever have to, and its not right.

Dkt. No. 8-6 at 34.

In recommending that this claim be rejected, the state habeas court reasoned:

> 9.    A defendant must be able to show authority in support of his argument that the objections would have been meritorious. *Wert v. State*, 383 S.W.3d 747, 758 (Tex. App. – Houston [14th] 2012, no pet.);
>
> 10.    Applicant relies on case law in which the witnesses in question were being directly asked or responding specifically about another witness's truth or believability […] (citing *Ochs v. Martinez*, 789 S.W.2d 949, 956 (Tex. App. – San Antonio 1990, writ denied) (where witness was testifying about the truth/falsity of another witness's testimony); *Black v. State*, 634 S.W.2d 356, 357-58 (Tex. App. – Dallas 1982, no pet.) (where witness was testifying about believing whether the victim was telling the truth); *Fuller v. State*, 224 S.W.2d 823, 833-35 (Tex. App. – Texarkana 2007, no pet.) (where witness was being questioned about believing the victim).

11.     The complained-of testimony form Krissi Oden was not bolstering, but instead a response to a question about Oden's observations of the complainant, not the victim's credibility;

12.     Applicant failed to show that the complained-of testimony would have been successfully excluded;

13.     Applicant failed to meet his burden of showing that his trial counsel was deficient;

14.      Even assuming error, Applicant failed to meet his burden of showing that but for the stepmother's testimony, he would not have been found guilty[.]

Dkt. No. 8-30 at 192-193.

Holland is not entitled to federal habeas relief on this claim.

Under Texas law, "[o]rdinarily, the opinion of a witness as to the truth or falsity of other testimony may not be asked for." *Black*, 634 S.W.2d at 357 (citing *Ayala v. State*, 352 S.W.2d 955, 956 (Tex. Crim. App. 1962)). "One rationale for this rule is that truth or falsity bears directly on a witness' credibility, and the determination of credibility is vested in the exclusive province of the jury." *Id.* at 357-58 (citing *Johnson v. State*, 503 S.W.2d 788, 793 (Tex. Crim. App. 1974)). "A more compelling reason for prohibiting a witness from testifying as to the truthfulness of another witness is that such testimony constitutes impermissible bolstering." *Id.* "'Bolstering' occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party." *Id.* (citing *Pless v. State*, 576 S.W.2d 83, 84 (Tex. Crim. App. 1978)).

Here, the state habeas court's determination that the stepmother's testimony was not bolstering is a state law determination that may not be overturned on federal

habeas review. *See*, *e.g.*, *Anderson v. Dir. TDCJ-CID*, 2:18-CV-146-Z-BR, 2021 WL 2877461, at *12 (N.D. Tex. June 30, 2021), *rec. accepted* 2021 WL 2874117 (N.D. Tex. July 8, 2021) ("First, Respondent is correct that the 'correctness of the state habeas court's interpretation of state law' underlying an ineffective assistance of counsel claim may not be reviewed by the federal court … The TCCA reviewed Petitioner's exact ineffective assistance of counsel claims and did not find that the challenged testimony was both inadmissible and prejudicial.") citing *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004)).

Considering that determination, Holland cannot show that his counsel was ineffective for failing to object – as much as an objection relied on bolstering.

But, even if the state habeas court's determination did not rely on an interpretation of state law, Holland still fails to show that it was unreasonable. "To prevail on ineffective assistance of counsel based on a failure to raise an objection, the appellant must show that, had his counsel objected, the objection would have been sustained or that it would have been error for the trial court to overrule the objection." *Cornejo v. State*, 2018 WL 4923936, at *5 (Tex. App. – Houston [1st Dist.] Oct. 11, 2018) (unpublished) (citation omitted); *see also Klein v. United States*, Civ. Action No. H-13-963, 2014 WL 12855826, at *10 (S.D. Tex. Mar. 28, 2014) ("Therefore, even if his trial counsel or Gallagher had raised these variance issues, Klein has not shown those objections would have succeeded, and thus he has not shown a reasonable attorney would have objected at trial or appeal."); *Liberto v. TDCJ-CID*, Civ. Action No. 4:08cv89, 2011 WL 1085182, at *6 (E.D. Tex. Mar. 21, 2011) ("A failure to object does

not constitute deficient representation unless a sound basis exists for objection.")
citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)).

Holland does not reference any authority showing that an objection would have succeeded. Unlike all the cases that Holland references – and the undersigned did not locate any on-point jurisprudence either – the stepmother did not offer a direct opinion on the complainant's veracity, nor was she asked to do so; she gave testimony that indirectly suggested that she believed the victim. *Compare, e.g.*, *Ochs*, 789 S.W.2d at 956 (finding that trial court erred in allowing lay witnesses to testify that the complainant was telling the truth about the alleged sexual abuse); *Matter of G.M.P.*, 909 S.W.2d 198, 205-06 (Tex. App. – Houston [14th Dist.] 1995, no writ) (expert testimony that the child sex assault complainant "is telling the truth" and that the expert "believe[d] [the complainant] was sexually assaulted by [the defendant]" was inadmissible); *Black*, 634 S.W.2d at 357-58 (questioning invaded province of the jury when witness was asked "[d]o you have an opinion as to whether or not (the complainant) is being truthful?", and she answered, "I believe she's telling the truth").

Given the absence of authority showing that an objection would be sustained, the undersigned cannot say that the CCA's rejection of this claim was so unreasonable that fairminded jurists could not debate it. So Holland is not entitled to federal habeas relief in relation to it.

### C.    Counsel Referred to Complainant as the Victim

Holland claims that his trial counsel was ineffective because he referred to the complainant as the victim once, asking a defense witness, "[y]ou didn't know … the victim involved in this case?" Dkt. No. 8-7 at 16-17; Dkt. No. 1 at 6.

In recommending that this claim be rejected, the state habeas court reasoned:

107.    Applicant claimed that by referring to the complainant as "victim" a single time during trial, trial counsel was ineffective;

108.    The reporter's record of trial demonstrates that [trial counsel] referred to the complainant as "victim" once during the trial;

109.    [Trial counsel] testified that if he referred to the complainant as "the victim" once, it would have been by accident and he would have misspoke;

…

22.    In *Cueva v. State*, the Court of Appeals found that a defense counsel's use of the term "victim" was not deficient " in light of the fact that such terms are commonly used at trial in a neutral manner to describe the events in question and, in context, carry no implication that the person using such terms has an opinion one way or the other about the guilt of the defendant. 339 S.W.3d 839, 866 (Tex. App. – Corpus Christi 2011, pet ref'd). "[T]he term 'victim' is relatively mild and non-prejudicial, especially given that courts have held invocation of far stronger terms did not amount to reversible error;" *Id.* at 864 (citations omitted);

23.    Applicant has failed to show that [trial counsel's] single accidental reference of complainant as "victim" fell below an objective standard of reasonableness;

24.    Applicant failed to show that this single reference was the "but for" cause of the jury finding Applicant guilty[.]

Dkt. No. 8-30 at 188, 193-94 (internal citations omitted).

Holland fails to show that the state habeas court's analysis was unreasonable.

Citing a Delaware case, he argues that the use of the term "victim" is not appropriate

when the commission of a crime is in dispute. *See Jackson v. State*, 600 A.2d 21, 24 (Del. 1991). But *Jackson* addressed the issue in the context of a court error claim when the prosecutor repeatedly used the term.

Holland points to no case in which the one-time, accidental use of the term "victim" amounted to ineffective assistance of counsel, and the undersigned has not located any. The closest case is *Cueva* where the court refused to find ineffectiveness under similar facts as explained by the state habeas court. *See Cueva*, 339 S.W.3d at 866.

And, so, fairminded jurists could debate whether Holland's counsel was ineffective for his one-time, accidental use of the term "victim," and the CCA's rejection of this claim was not an unreasonable application of *Strickland*.

### D. Failure to Object to Testimony that the Complainant was Hit by a Car, Developed a Serious Kidney Disease, and had a Transplant

Holland faults his trial counsel for not objecting to testimony from the complainant and her relatives that, following an accident in which she was hit by a car, it was discovered she had a serious kidney disease, requiring a transplant. Dkt. No. 1 at 6; Dkt. No. 2 at 30. He claims that this testimony was irrelevant and the State presented it to garner sympathy with the jury. Dkt. No. 2 at 30.

In recommending that this claim be rejected, the state habeas court reasoned:

16.    A defendant must be able to show authority in support of his argument that the objections would have been meritorious. *Wert v. State*, 383 S.W.3d 747, 757 (Tex. App. – Houston [14th] 2012, no pet);

17.    Applicant failed to cite to any case law or other objective standard of reasonableness showing that [trial counsel] should have

objected to the testimony about the car accident and complainant's kidney illness, or that if he had objected, the evidence would have been excluded;

18. Evidence of complainant's kidney disease would have been amissible [sic];

19. Applicant failed to prove that [trial counsel's] performance was deficient by failing to object to admissible evidence;

20. Assuming error, Applicant failed to prove that but for the alleged error, he would not have been found guilty of continuous sexual abuse of a child[.]

Dkt. No. 8-30 at 193.

Holland is not entitled to federal habeas relief on this claim.

To start, the state habeas court's conclusion that the kidney disease evidence was admissible under state law is binding on this Court. *See, e.g., Garza v. Thaler*, 909 F. Supp. 2d 578, 652 (W.D. Tex. 2012) ("The Texas Court of Criminal Appeals' conclusion that Jeff Mitchel's testimony contradicting (or arguably impeaching) Ms. Henderson's trial testimony would have been inadmissible under applicable Texas rules of evidence is binding upon this Court in this federal habeas corpus proceeding.") citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court siting in habeas corpus."); *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (a state court's interpretation of state law binds a federal court sitting in habeas corpus); *Amador v. Quarterman*, 458 F.3d 397, 412 (5th Cir. 2006) (holding a federal habeas court must defer to a state court's interpretation of state law); *Fuhrman v. Dretke*, 442 F.3d 893,

901 (5th Cir. 2006) (holding the same); *Young*, 356 F.3d at 628 ("In our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law."); *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000) (holding a federal habeas court may not review a state court's interpretation of its own law); *Gibbs v. Johnson*, 154 F.3d 253, 259 (5th Cir. 1998) (holding the same), *cert. denied*, 526 U.S. 1089, 119 S. Ct. 1501, 143 L.Ed.2d 654 (1999)).

Holland cannot show ineffectiveness, because counsel need not make meritless objections. *See Koch v. Puckett*, 907 F.2d 523, 527 (5th Cir. 1990).

And Holland also fails to show that CCA's finding that he could not establish prejudice even assuming ineffectiveness is unreasonable.

Holland argues that the kidney disease evidence garnered sympathy with the jury, which was important given that the only evidence to support the State's case was the complainant's testimony. He claims that the evidence was a focal point of the State's closing argument. He points to the State's argument that the jury "should honor [the complainant's] courage by convicting [Holland.]" Dkt. No. 2 at 37.

The undersigned cannot agree.

First, the State's honor-her-courage argument was more directed at the outcry of sexual abuse than the car accident and kidney disease. *See* Dkt. No. 8-7 at 79-80.

Second, the evidence did not go to the complainant's credibility, nor did it go to an element of the offense.

At bottom, it is speculative that this evidence had any impact, much less impact sufficient to undermine confidence in the outcome of the proceeding. *See*

*Strickland*, 466 U.S. at 694; *see also Nee v. Lumpkin*, Civ. Action No. H-21-4192, 2022 WL 2118370, at *8 (S.D. Tex. June 13, 2022) ("An ineffective assistance of counsel claim based on speculation or conclusional rhetoric will not warrant habeas relief.") (citation omitted). At the least, fairminded jurists could debate the impact this evidence might have had. Thus, even assuming ineffectiveness, Holland fails to show that the CCA's determination of no prejudice was unreasonable.

The CCA did not unreasonably apply *Strickland* in rejecting this claim.

### E.    Failure to Impeach Complainant with Prior Inconsistent Statement

At trial, the complainant testified that she did not outcry about the abuse when it was occurring because she was scared, she did not want to damage her brother's friendship with Holland's nephew, and because she did not think that anyone would believe her. Dkt. No. 8-5 at 152, 193. But, in a report that the complainant's stepmother filled out for the Texas Department of Family and Protective Services, which was produced to Holland's trial counsel before trial, the stepmother wrote that the complainant told her that she never told anyone about the abuse because "she was scared of the perpetrator, as he told her that he would harm her family if she ever said anything." Dkt. No. 8-32 at 30.

In recommending that this claim be denied, the state habeas court reasoned:

26.    Appellate courts have found no error where a trial attorney's decision not to raise inconsistent testimony or impeach a witness may constitute sound trial strategy because the attempt to impeach may be more harmful than beneficial. *Briones v. State*, No. 01-14-00121-CR, 2016 WL 2944274, at *11 (Tex. App. – Houston [1st] May 19, 2016, no pet.) (not designated for publication);

27.    Applicant's reliance on *Ex parte Saenz* is incorrect. 491 S.W.3d 819, 829 (Tex. Crim. App. 2016). The *Saenz* case differs because in that case, defense counsel failed to impeach a State's witness with a direct contradiction of a previous statement, where in the hospital, the witness said he would not be able to identify his assailant, but identified the defendant during trial. *Id.* at 829. Further, the prior inconsistent statement in *Saenz* was the one piece of evidence that could have substantially neutralized the identification of the defendant. *Id.*

28.    The complained-of statements at issue are not direct contradictions of one another;

29.    The complained-of testimony, if negated, would not have undermined an essential element of the State's case;

30.    Applicant has failed to present case law or other standards to show that [trial counsel's] failure to impeach the complainant fell below an objective standard of reasonableness;

31.    Applicant failed to show that but for his failure to impeach the complainant, he would not have been found guilty[.]

Dkt. No. 8-30 at 194.

This analysis was reasonable. In the context of an IAC claim, the habeas petitioner must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Holland fails to do that.

As the state habeas court pointed out, the attempt to impeach can be more harmful than beneficial. Indeed, "[t]he Fifth Circuit has recognized that a trial counsel's tactical decision not to impeach a child-victim of sexual abuse is not unreasonable because doing so may do more harm than good." *Frattarola v. Lumpkin*,

Civ. Action No. H-21-2895, 2023 WL 5191948, at *7 (S.D. Tex. Aug. 11, 2023) (citing *Reed v. Vannoy*, 703 F. App'x 264, 270 (5th Cir. July 28, 2017) (per curiam); *see also Barker v. Lumpkin*, No. CV H-21-3001, 2023 WL 3261779, at *11 (S.D. Tex. May 4, 2023)).

This is especially true here where, as the state habeas court noted, the complainant's out of court statement was not necessarily inconsistent with her trial testimony and it would not have negated an essential element of the case. Also, the out-of-court statement would have introduced the possibility that Holland threatened the complainant to stay silent – a possibility that was not otherwise raised.

At bottom, Holland's trial counsel could have reasonably concluded that it was better strategy not to impeach the complainant with the supposedly inconsistent statement.

Holland also fails to overcome the finding that he did not show any prejudice even assuming ineffectiveness. Because the statement at issue was not necessarily inconsistent with the complainant's trial testimony, because it did not negate an essential element of the State's case, and because it would have introduced the possibility that Holland threatened the complainant, the undersigned cannot conclude that it was unreasonable to find that Holland failed to establish that he was prejudiced by his trial counsel's decision not to impeach the complainant with it.

The CCA did not unreasonably apply *Strickland* in denying this claim.

### F.        Failure to Investigate and Introduce Evidence of the Closet

Holland claims that his trial counsel was ineffective for not physically examining the closet where most of the claimed sexual abuse occurred and for not introducing photographs and measurements of the closet taken years after the events in question. Dkt. No. 2 at 33.

Holland testified on direct that the closet was too small, given the materials in it, to accommodate the alleged acts of abuse. Dkt. No. 8-7 at 39. Holland also took photos and measurements of the closet at the time of trial, but his trial counsel elected not to introduce those. Dkt. No. 8-32 at 31, Dkt. No. 8-30 at 45. Nor did his trial counsel ever physically examine the closet. Dkt. No. 8-30 at 45.

During deliberations, the jury sent out notes asking for Holland's testimony about the measurements of his closet and about the consequences of the inability to reach a unanimous verdict. Dkt. No. 8-1 at 58-61.

In rejecting this claim, the state habeas court reasoned:

33.    Texas courts will sustain a defendant's challenge to trial counsel's failure to investigate [if] "(1) the consequence of the failure to investigate is that the only viable defense available to the accused is not advanced, and (2) there is reasonable probability that, but for, counsel's failure to advance the defense, the result of the proceeding would have been different. *Cantu v. State*, 993 S.W.2d 712, 718 (Tex. App. – San Antonio 1999, pet. ref'd);

34.    Applicant has failed to demonstrate that [trial counsel's] failure to visit Applicant's closet in person and/or his refusal to offer Applicant's pictures and measurements of his own closet eight years after the alleged offense prevented him from offering his only viable defense;

35.    Applicant failed to show that [trial counsel's] refusal to use photographs and measurements of a scene taken eight years after an offense fell below an objective standard of reasonableness;

36.    Assuming error, Applicant cannot show that but for those photographs or measurements, the jury would not have found Applicant guilty[.]

Dkt. No. 8-30 at 194-95.

The state habeas court's analysis of this claim was not unreasonable.

As to trial counsel's failure to examine the closet, Holland never explains what such an investigation would have revealed that was not already known. *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (a petitioner who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial) citation omitted)).

As to the failure to introduce photographs of the closet taken eight years after the events in question, Holland fails to show how this was ineffective. Pictures taken years later – especially without any corresponding evidence that the photos were an accurate depiction of the closet during the pertinent timeframe – had little, if any, relevance. Indeed, Holland fails to establish that the photographs would have even been admissible, much less that his counsel was ineffective for not introducing them.

And, as to the measurements of the closet – ten feet five inches long and six feet wide – while Holland is correct that these would not have changed since the events in question, the measurements alone do not establish that it would have been

difficult for sexual abuse to occur in the closet. Their utility is limited; it is unclear how they add anything to Holland's testimony about the limited space in the closet.

In sum, the CCA reasonably determined that Holland failed to establish ineffectiveness in relation to this claim.

And, for largely the same reasons, it also correctly, or at least reasonably, determined that Holland failed to show prejudice. Holland fails to show how the photographs and measurements, to the extent admissible, would have led to the reasonable probability of a different outcome.

## Recommendation

The Court should deny Holland's application for federal habeas relief.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 16, 2023.

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE